UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN Re: HSBC Bank USA, N.A., Debit Card Overdraft
Fee Litigation

Case No. 2:13-md-02451-ADS-AKT

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION........................................................................................... 1

II.    JURISDICTION AND VENUE ...................................................................... 6

III.   THE PARTIES ............................................................................................... 6

    A.     Plaintiffs and Class Representatives ...................................................... 6

    B.     Defendants .............................................................................................. 7

IV.    CLASS ACTION ALLEGATIONS ............................................................... 8

V.     SUBSTANTIVE ALLEGATIONS .............................................................. 12

    A.     HSBC..................................................................................................... 12

    B.     HSBC Breaches Its Contracts With Customers..................................... 13

    C.     HSBC'S Re-Ordering of Checking Account Transactions Is Illegal and
           Violates the Provisions of the Form Contracts Entered Into Between HSBC
           and the Members of the Class.................................................................. 17

    D.     HSBC Internal Documents Demonstrate That HSBC Intentionally
           Implemented This Deceptive, Unlawful and Fraudulent Overdraft Fee
           Scheme Under The Euphemistically Named "Overdraft Fee Revenue
           Enhancement" Program........................................................................... 20

    E.     HSBC Fails to Provide Advance Notice to Customers of Overdrafts or to
           Advise Customers of Their Right to Opt Out .................................... 29

    F.     HSBC'S Overdraft Policies and Practices are Contrary to Best Practices ... 30

    G.     HSBC's Unconscionable Provisions and Policies............................... 32

VI.    NATIONAL CLASS AND THE STATE SUBCLASSES ............................ 34

VII.   ALLEGATIONS SPECIFIC TO PLAINTIFF JURA ................................ 38

VIII.  ALLEGATIONS SPECIFIC TO PLAINTIFF HANES ............................ 41

FIRST CAUSE OF ACTION
(On Behalf of Plaintiffs, the National Class and the State Subclasses)
(Breach of Contract).................................................................................. 43

i

**SECOND CAUSE OF ACTION**
**(On Behalf of Plaintiffs, the National Class and the State Subclasses)**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**........................................ **44**

**THIRD CAUSE OF ACTION**
**(On Behalf of Plaintiffs, the National Class and the State Subclasses)**
**(Conversion)** ............................................................................................................................... **45**

**FOURTH CAUSE OF ACTION**
**(On Behalf of Plaintiffs, the National Class and the State Subclasses)**
**(Unjust Enrichment)**.................................................................................................................... **46**

**FIFTH CAUSE OF ACTION**
**(On Behalf of Plaintiff Jura and the New York Subclass)**
**(Violation of New York General Business Law § 349)** ............................................................. **46**

**SIXTH CAUSE OF ACTION**
**(On behalf Plaintiff Hanes and the California Subclass)**
**(Violation of the California Consumer Legal Remedies Act, Civil Code §§ 1750, *et seq.*)**... **47**

**SEVENTH CAUSE OF ACTION**
**(On Behalf Plaintiff Hanes and the California Subclass)**
**(Violation of Business and Professions Code §§ 17200 et seq.)**................................................ **48**

**EIGHTH CAUSE OF ACTION**
**(On Behalf of Plaintiff Hanes and the California Subclass)**
**(Violation of Business and Professions Code §§ 17500 et seq. - False Advertising)** ............. **49**

**NINTH CAUSE OF ACTION**
**(On Behalf of Plaintiffs and the Connecticut Subclass)**
**(Violation of Connecticut General Statute § 42-110b, *et seq.*)** ................................................. **50**

**TENTH CAUSE OF ACTION**
**(On Behalf of Plaintiffs and the Delaware Subclass)**
**(Violation of 6 Delaware Code Annotated Title 6, §§ 2511 *et seq.*)** ........................................ **51**

**ELEVENTH CAUSE OF ACTION**
**(On Behalf of Plaintiffs and the Illinois Subclass)**
**(Violation of 815 ILCS 505/1, *et seq.*)** ...................................................................................... **52**

**TWELFTH CAUSE OF ACTION**
**(On Behalf of Plaintiffs and the Illinois Subclass)**
**(Violation of 815 ILCS 510/1, *et seq.*)** ...................................................................................... **54**

**THIRTEENTH CAUSE OF ACTION**
**(On Behalf of Plaintiffs and the Maryland Subclass)**
**(Violation of Maryland Code Annotated, Commercial Law §§ 13-301, *et seq.*)**................... 55

**FOURTEENTH CAUSE OF ACTION**
**(On Behalf of Plaintiffs and the New Jersey Subclass)**
**(Violation of New Jersey Statute Annotated § 56:8-1, *et seq.*)** ................................. 57

**FIFTEENTH CAUSE OF ACTION**
**(On Behalf of Plaintiffs and the Oregon Subclass)**
**(Violation of ORS 646.605, *et seq.*)** ......................................... 58

**SIXTEENTH CAUSE OF ACTION**
**(On Behalf of Plaintiffs and the Washington Subclass)**
**(Violation of RCW 19.86.010, *et seq.*)**...................................... 60

**SEVENTEENTH CAUSE OF ACTION**
**(On Behalf of Plaintiffs and the Washington D.C. Subclass)**
**(Violation of D.C. Code § 28-3901, *et seq.*)**............................... 61

**PRAYER FOR RELIEF**........................................................... 63

Plaintiffs Darek Jura and Leah Hanes (hereinafter referred to as "Plaintiffs" or "Class Representatives"), through undersigned counsel, on behalf of themselves and all others similarly situated, allege the following based on personal knowledge as to allegations regarding themselves and on information and belief as to other allegations.

## I. __INTRODUCTION__

1.      This is a civil action seeking monetary damages, restitution, and injunctive relief from Defendants HSBC Bank USA, N.A., HSBC USA Inc., and HSBC North America Holdings Inc. (collectively herein "HSBC" or "Defendants"), arising out of their unfair, deceptive, and unconscionable assessment and collection of excessive overdraft fees.

2.      HSBC provides debit cards and/or ATM cards (collectively herein "check cards") to its checking account customers, which include individual consumer and small business depositors.  Through those check cards, customers may engage in "point of sale" ("POS") transactions using their check cards with merchants directly, who debit the  customers' accounts, or customers may withdraw money from their accounts at automatic teller machines ("ATMs").

3.      If, according to HSBC's accounting practices detailed below, a customer does not have sufficient funds in the account, the transaction is considered an "overdraft." HSBC may honor or allow an overdraft to go through despite the lack of funds in the account. If HSBC allows such a POS or ATM transaction to proceed, HSBC charges the customer's account $35 for each separate overdraft. These fees are known as "overdraft fees."

4.      Before check cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrafted or otherwise deficient accounts for customers who were typically in good standing.  The third party involved in the sales transaction allowed the customer to purchase goods or services with a check with the expectation that the funds would be available and that the check would clear when the check was presented to the bank.  For

1

example, if a customer used a check to purchase groceries, the grocery store would only know if the check cleared after the groceries had been purchased and the check had been presented to the bank for payment.  Since there was no way to know when third parties would present checks to the bank, banks extended the courtesy of honoring checks written on overdrafted or otherwise deficient accounts with the expectation that the customer would be able to deposit funds in the account in sufficient time for the check to clear or shortly thereafter.

5.       The same considerations are not present when the transaction is one with a check card.  HSBC immediately knows if a POS or ATM transaction overdraws its customer's account. As such, at the time the transaction is made,  HSBC could simply decline to honor POS or ATM transactions made with check cards where there are insufficient funds in the account.  The transaction would not take place then unless the consumer presented an alternative form of payment.  For both POS and ATM transactions, the customer could be provided a warning from HSBC that an overdraft fee would be incurred if they went forward with the transaction.  The consumer would then be able to make an informed decision about whether or not to go forward with the transaction and incur the overdraft fee.  Until a few years ago, most banks simply declined POS and/or ATM transactions that would overdraw an account.

6.       Instead of declining POS and/or ATM transactions when there are insufficient funds, however, or warning the customer that an overdraft fee will be assessed if he or she proceeds with the transaction, HSBC routinely processes such transactions in order to charge its customers an overdraft fee of $35, even when the transaction is for only a few dollars. This automatic fee-based overdraft scheme is designed and intended solely to increase overdraft fee revenue.

2

7.     Not only does HSBC fail to disclose to customers when overdraft fees will be charged, HSBC also manipulates the sequencing of transactions in order to maximize the number of overdraft fees it can charge.   In addition, HSBC misleadingly refers to this scheme to maximize overdraft fees as "overdraft protection" and conceals from consumers the fact their rights in regards to opting in or opting out of this overdraft fee scheme.   HSBC's conduct is deceptive, not transparent and in violation of the form contracts that HSBC enters into with its customers, including Plaintiffs and the members of the Class.

8.     HSBC unlawfully maximizes its overdraft fees by re-sequencing the order in which the debits come in, sometimes over several days, from highest-to lowest, rather than the order in which they come in, so as to charge the $35 even if the customer has adequate funds in his or her account at the time of the debit.   HSBC not only unlawfully resequences the transactions from highest-to-lowest, it also unlawfully groups transactions that occur over several days before resequencing those transactions from highest-to-lowest.   More importantly, HSBC deceives its customers about the real methodology by which it organizes and calculates transactions for purposes of determining when overdraft fees should be charged.   This conduct is unlawful, deceptive and subjects HSBC to liability to Plaintiffs and the members of the Class. Through HSBC's overdraft fee scheme, not only are HSBC's customers charged excessive overdraft fees, but, because of this high-to-low re-sequencing, they cannot tell whether their account is overdrawn.

9.     As a result of HSBC's manipulation of customers' transactions, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions. Indeed, overdraft charges are likely to occur at times when, but for the manipulation, there would be adequate funds in the account and no overdraft would

occur.   For example, if a customer has an account with a $50 balance and makes four transactions of $10 and one later transaction of $100 the same day, HSBC debits the transactions from the account largest-to-smallest, thus subjecting the customer to four overdraft fees. Conversely, if the $100 transaction were debited last (in the order it was made), the customer would only be subject to one overdraft fee. *See* FDIC Study of Bank Overdraft Programs, November 2008, available at http://www.fdic.gov/bank/analytical/overdraft/, at p. 11, n.12.

10.     In addition, although it is possible for HSBC to alert its check customers at the time a POS transaction or ATM withdrawal is made that the transaction will overdraw their account and cause them to incur fees, HSBC affirmatively chooses not to and conceals this fact from its customers.   Because HSBC's check card customers are not notified of the potential overdraft and are not given the option to decline the check card transaction or to provide another form of payment, the customers incur monetary damages in the form of overdraft fees.

11.     Upon information and belief, HSBC operates a computer-automated overdraft system which is programmed to maximize the number of overdrafts by re-ordering debits, which increases the number and amount of fees charged per customer.   This computer-automated overdraft system is specifically programmed in a manner designed to maximize overdraft fees when it could be reprogrammed to handle transactions in chronological order as soon as transactions are entered into.

12.     HSBC's overdraft fees can cost its account holders, including Plaintiffs and the members of the Class, hundreds of dollars in a matter of days, or even hours, when they may be overdrawn only by a few dollars. Even more egregious, a customer's account may not actually be overdrawn at the time the overdraft fee is charged or at the time of the POS transaction. Because of the way HSBC designed and handles its overdraft fee resequencing scheme, it is

4

impossible for customers to track their transactions to avoid overdraft fees and they can be hit with multiple $35 overdraft fees on minor transactions for significantly less than $35.

13.     HSBC seeks to maximize the number of overdraft fees it charges check card customers because overdraft fees are a primary source of revenue for HSBC.

14.     On August 9, 2009, an article was published in the *Financial Times* that stated that United States banks "stand to collect a record $38.5 [billion] in fees for customer overdrafts this year," and that "fees are nearly double those reported in 2000." The article goes on to state that "[o]verdraft fees accounted for more than three-quarters of service fees charged on customer deposits."

15.     HSBC also deceived and concealed information from its customers, including Plaintiffs and the members of the Class, about their rights in regards to their euphemistically called "overdraft protection."  Prior to July 1, 2010, banks like HSBC could automatically enroll consumers in their standard overdraft practices for all types of transactions when a customer opened an account.  Pursuant to Federal Reserve System rules enacted in 2011, however, for new accounts opened after July 1, 2010, customers were required to opt-in to receive "overdraft protection."  Similarly, customers with existing accounts with "overdraft protection" who did not affirmatively opt-in to "overdraft protection" by August 15, 2010 ceased receiving such protection.  The opt-in requirement applies to all accounts covered by Regulation E, including payroll card accounts, but not to check transactions, recurring debits, or ACH transactions.

16.     Thus, prior to the middle of 2011, it was not clearly disclosed to check card customers that they have the right to "opt out" of HSBC's overdraft scheme.  Moreover, after the new Federal Reserve System rules went into effect, customers still were not given a meaningful

opportunity to "opt in," as the nature of HSBC's wrongful overdraft practices, as alleged in greater detail herein, was not clearly disclosed to customers.

17.     HSBC reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge. This practice is a violation of the laws of the different states of the United States in which HSBC conducts business, including the consumer protection, tort and contract laws of those states.   In particular, HSBC's conduct violates New York's contract and consumer protection laws, and violates the implied covenant of good faith and fair dealing in HSBC's contracts with its customers under New York law.   HSBC conducts the majority of its banking business in the United States in New York, where the majority of its banking branches are located.

## II.  JURISDICTION AND VENUE

18.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  The amount-in-controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and there is minimal diversity because certain members of the classes are citizens of a different state than any defendant as required by 28 U.S.C. § 1332(d)(2).

19.     Venue is proper in this Court because Defendants have, at all relevant times, been doing business in the Eastern District of New York and throughout the State of New York.

## III.  THE PARTIES

A.      Plaintiffs and Class Representatives

20.     Plaintiff **Darek Jura ("Plaintiff Jura")** is, and at all relevant times has been, a citizen of the State of New York and a resident of Erie County.  At all relevant times, Mr. Jura was a customer of HSBC who was charged improper overdraft fees.

21.     Plaintiff **Leah Hanes ("Plaintiff Hanes")** is, and at all relevant times has been, a citizen of the State of California and a resident of Los Angeles, California. At all relevant times, Plaintiff Hanes was a customer of HSBC who was charged improper overdraft fees.

**B.     Defendants**

22.     Defendant **HSBC Bank USA, N.A.** is a Delaware corporation, with its headquarters located in McLean, Virginia. Its principal operating office is located in New York City and it maintains offices and numerous branches, and conducts significant business, in New York State.

23.     Defendant **HSBC USA Inc.** is a Maryland corporation with principal offices located at 452 Fifth Avenue, New York, New York 10018. HSBC Bank USA, N.A. operates and acts on behalf of and at the direction of HSBC USA Inc.

24.     Defendant **HSBC North America Holdings Inc.** is a Delaware corporation with principal offices located at 26525 North Riverwoods Boulevard, 4 North East, Mettawa, Illinois, 60045. HSBC Bank U.S.A. is a subsidiary of HSBC North America Holdings Inc. HSBC Bank USA, N.A. operates and acts on behalf of and at the direction of HSBC North America Holdings Inc.

25.     Each of the Defendants is liable for the acts, omissions and conduct of the other Defendants as each Defendant is either the agent, co-conspirator, joint venturer and/or alter ego of the other Defendants. All of the Defendants are under the joint direction of the same leadership who direct the policies of all of the Defendants, who all share the same interests and therefore act jointly in regards to those interests. All of the Defendants are thus jointly liable for all of the acts, omissions and conducts of the other Defendants.

## IV.  CLASS ACTION ALLEGATIONS

26.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil

Procedure 23, on behalf of himself and all others similarly situated. The proposed **National**

**Class** and **State Subclasses** are defined as:

> All HSBC customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest. (the "**National Class**").

> All HSBC customers who have accounts at branches in the State of New York for the purpose of asserting claims under New York's consumer fraud statute – New York General Business Law § 349 – and incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest (the "**New York Subclass**").

> All HSBC customers who have accounts at branches in the State of California who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest (the "**California Subclass**")

> All HSBC customers who have accounts at branches in the State of Virginia who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest (the "**Virginia Subclass**").

> All HSBC customers who have accounts at branches in the State of Connecticut who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest (the "**Connecticut Subclass**").

> All HSBC customers who have accounts at branches in the State of Delaware who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest (the "**Delaware Subclass**").

> All HSBC customers who have accounts at branches in the State of Florida who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest (the "**Florida Subclass**").

> All HSBC customers who have accounts at branches in the State of Illinois who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest (the "**Illinois Subclass**").

> All HSBC customers who have accounts at branches in the State of Maryland who incurred an overdraft fee as a result of HSBC's practice of re-sequencing

debit card and/or POS transactions from highest to lowest (the "**Maryland Subclass**").

All HSBC customers who have accounts at branches in the State of New Jersey who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest (the "**New Jersey Subclass**").

All HSBC customers who have accounts at branches in the State of Oregon who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest (the "**Oregon Subclass**").

All HSBC customers who have accounts at branches in the State of Pennsylvania who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest (the "**Pennsylvania Subclass**").

All HSBC customers who have accounts at branches in the State of Washington who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest (the "**Washington Subclass**").

All HSBC customers who have accounts at branches in the District of Columbia who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest (the "**Washington D.C. Subclass**").

(All of the above subclasses are hereinafter referred to as the "**State Subclasses**")

27. The National Class and the State Subclasses are collectively referred to as the "Classes." Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

28. Excluded from the Classes are Defendants and their parents, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members and staff.

29. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

(a) **Numerosity Under Rule 23(a)(1)**: The members of the Classes are so numerous that individual joinder of all the members is impracticable. Plaintiffs are informed and believe that there are at least many thousands of HSBC customers who have been damaged by HSBC's unfair, deceptive, and illegal conduct alleged herein.

(b) **Commonality Under Rule 23(a)(2)**: This action involves common questions of law and fact, including, but not limited to, whether HSBC:

- did not clearly disclose to check card customers that they have the right to "opt out" of HSBC's overdraft scheme, or meaningfully explain the nature of such scheme before check card customers "opted-in";

- does not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

- does not alert its customers that a check card transaction will trigger an overdraft fee and does not provide customers the opportunity to cancel such transactions;

- manipulates and reorders transactions so that it can increase the number of overdraft charges it imposes on customers;

- manipulates and reorders debits from highest to lowest in order to maximize overdrafts;

- imposes overdrafts and overdraft fees when, but for reordering transactions, there would otherwise be sufficient funds in the account;

- engages in practices that have damaged Plaintiffs and members of the Classes;

- engages in deceptive or unfair acts and practices in violation of the New York's Unfair and Deceptive Business Practices Act, for which Plaintiff Jura and the other members of the New York Subclass are entitled to recover;

- engages in deceptive, unfair or misleading acts and practices in violation of California's Business and Professions Code, for which Plaintiff Hanes and the other members of the California Subclass are entitled to recover;

- engages in deceptive, unfair or misleading acts and practices in violation of the consumer protection laws of the all of the states in which HSBC does business, for which Plaintiffs and the members of the State Subclasses are entitled to recover;

- converts the funds of Plaintiffs and members of the Classes;

- breaches its contracts with Plaintiffs and members of the Classes

- breaches the implied covenants of good faith and fair dealing;

- is unjustly enriched as a result of its overdraft fee policies and practices;

- causes injury to Plaintiffs and the other members of the Classes; and

- engages in practices that warrant equitable and injunctive relief.

(c)     **Typicality Under Rule 23(a)(3)**: The named Plaintiffs claims are typical of (and not antagonistic to) the claims of the members of the Classes. Plaintiffs, like all members of the Classes, have been subject to HSBC's overdraft charge policies and practices and have been damaged by HSBC's misconduct in that they incurred unlawful overdraft charges. Furthermore, the factual bases of HSBC's misconduct are common to all members of the Classes and represent a common thread of unconscionable, unfair and/or deceptive misconduct resulting in injury to all members of the Classes.

(d)     **Adequacy of Representation under Rule 23(a)(4)**: Plaintiffs are committed to the vigorous prosecution of this action. Plaintiffs will fairly and adequately protect the interests of the members of the Classes, and Plaintiffs' interests are coincident with and not antagonistic to those of the other Class members they seek to represent.  Plaintiffs' counsel is experienced in the prosecution of class actions.  On July 24, 2013, the Court appointed Plaintiffs' Counsel to be Co-Interim Class Counsel (Dkt. No. 24).

(e)     **The Classes Can be Properly Maintained Under Rules 23(b)(2) and(c)**:  HSBC has acted or refused to act, with respect to some or all issues presented in this

11

Complaint, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

(f)     **The Classes Can Be Properly Maintained Under Rules 23(b)(3) and (c)**: Questions of law common to the members of the Classes predominate over any questions affecting only individual members with respect to some or all issues presented in this Complaint. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual litigation of the claims of all members of the Classes is impracticable because the cost of litigation would be prohibitively expensive for each member of the Classes and would impose an immense burden upon the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual and legal issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and is the only means to protect the rights of all members of the Classes.

## V. <u>SUBSTANTIVE ALLEGATIONS</u>

**A.     <u>HSBC</u>**

30.     HSBC operates more than 475 bank branches throughout the United States, with over 370 in New York state as well as branches in Connecticut, Washington, D.C., Florida, New Jersey, Pennsylvania, Maryland, Virginia, California, Delaware, Illinois, Oregon and Washington state. According to *The Wall Street Journal*, as of 2010, HSBC was the fifth largest bank in the United States, with assets of $343.7 billion and deposits of $118.3 billion. HSBC offers its 3.8 million plus customers in the United States a full range of banking products and services to, among others, individuals, small businesses, corporations, and institutions through its

12

personal financial services, commercial banking, private banking, and global banking and markets segments.

**B.**    **HSBC Breaches Its Contracts With Customers**

31.    The terms of HSBC's checking accounts are contained in three often contradictory and misleading documents: (1) a  standard account holder agreement, (2) a terms and charges disclosures sheet and (3) a debit cardholder agreement.  All of these documents were drafted and imposed by HSBC and presented to its customers on a "take it or leave it" basis.

32.    The standard account holder agreement is referred to as the Rules for Deposit Account and it is a form document that is used by HSBC.  The Rules for Deposit Account which, upon information and belief, pertain to both Plaintiff Jura's and Plaintiff Hanes' claims (together, the "Rules") are attached hereto to this Complaint as **Exhibit A** (the "Jura Rules") and **Exhibit B** (the "Hanes Rules").  (The Jura Rules are dated "Rev 1/08," and his overdrafts at issue in this litigation occurred during August 2008.  The Hanes Rules are dated  "Rev 12/09," and her overdrafts at issue in this litigation occurred in May 2009.)

33.    The Rules state that:

> If you write a check for more money than you have in your account or against unavailable funds, the Bank may either pay the check, in which case you must pay the Bank back promptly, or return it.  The Bank may charge you a per item fee as shown on the *Terms and Charges Disclosure* if you write a withdrawal slip or check, make a withdrawal from an automated teller machine or other electronic funds facility, (including a point of sale terminal) agains insufficient funds or against funds unavailable for withdrawal.  You account may be debited on the day an item is presented, or at such earlier time as notification is received by the Bank by electronic or other means, that an item is drawn on your account has been deposited for collection in another financial institution.  You understand that the Bank reserves the right to pay items into overdraft, [and] to impose overdraft fees . . .

(Exs. A, B, p. 3).

13

34.     The Rules also state that the account "may be debited on the day an item is presented, or at such earlier time . . ."  There is no provision for holding a debit for multiple days and posting it several days after the item is presented.  As such, HSBC's policy of reordering charges over multiple days both breaches the terms of the form contracts between HSBC and its customers but the Rules also fraudulently misrepresent HSBC's true overdraft policies.

35.     The Rules further state that "[t]the Bank generally pays the largest debit items drawn on a depositor's account first."  (*Id.*)  The Rules do not set forth the dollar amount of fees that will be charged for purported overdrafts.

36.     Instead, a separate document, the "Terms & Charges Disclosure"  (copy attached as **Exhibit C**), lists the dollar amount of fees that will be charged for purported overdrafts, in a chart entitled "Service Fees."  In small print, the chart states:   "Insufficient Funds (NSF) Checking ……………….. $35 each for each withdrawal, check or electronic fund transfer we pay or return that overdraws your account."  The Terms and Charges Disclosure is the second document that is part of the misleading and deceptive overdraft fee scheme perpetuated by HSBC.

37.     The third document that is part of the misleading and deceptive overdraft fee scheme is the debit cardholder agreement which is known as the "HSBC Debit MasterCard with *PayPass*^TM Cardholder Agreement" (the "Debit Card Agreement").  This document governs the use of its debit cards. The Debit Card Agreements which, upon information and belief, pertain to both Plaintiff Jura's and Plaintiff Hanes' claims are attached hereto as **Exhibit D** (dated 6/06) and **Exhibit E** (dated 12/08), respectively, govern the relationships between Plaintiffs Jura and Hanes on the one hand, and HSBC on the other.

38.     The Debit Card Agreement defines a "'Point-of-Sale' transaction" as a use of the card "to purchase goods or services at any merchant location that accepts the MasterCard debit card." The agreements expressly provide that:

> You acknowledge that all Point-of-Sale transactions will constitutes a *simultaneous withdrawal* from your Checking Account, even though the transaction might not be paid from your Checking Account until a later date.

(Ex. E, p. 1; Ex. F, p. 1) (emphasis added).

39.     The Debit Card Agreements provide that if sufficient funds are available at the time a Point-of-Sale transaction is authorized, a "hold" will be placed on the funds necessary to cover the transaction:

> •     "You can make point of sale purchases using your Debit MasterCard up to the amount of the available balance in your Checking Account at the time of the Point-of-Sale transaction." Deducted from the "available balance" is the amount of any "outstanding Point-of-Sale authorizations made to your Checking Account for Point-of-Sale transactions" and "other holds placed on your Checking Account."

> •     "We have the right to return any check or other item drawn against your Checking Account which would overdraw the account due to *the hold placed for a Point-of-Sale transaction made or authorized using your Debit MasterCard.*"

(Ex. E, p.1; Ex. F, p.1) (emphasis added).

40.     The Debit Card Agreements further provide that if sufficient funds are *not* available at the time a Point-of-Sale transaction is authorized − which "constitute[s] a simultaneous withdrawal from your Checking Account" − an overdraft fee may be imposed by HSBC:

> •     "We may, but do not have to, allow Point-of-Sale transactions which exceed the available balance in your Checking Account. If we do, you agree that we may treat the amount of such excess as an overdraft, and you agree to pay at once every such overdraft and any overdraft charges in effect from time to time."

- **"No Overdrafts.** You understand that your Debit MasterCard does not serve as a credit card nor as overdraft protection. You agree that you will not use your Debit MasterCard to make any withdrawal that exceeds the available balance in your Checking Account. If you make such a withdrawal, we may treat the excess amount as an overdraft on your account, which you agree to pay at once, together with any overdraft charges in effect from time to time."

(Ex. E, pp. 1-2; Ex. F, pp. 1-2).

41.     Finally, the Debit Card Agreements provides that their provisions are controlling over any inconsistent provisions in the Rules for Deposit Accounts or other disclosures:

> Both your Checking Account and Savings Account are also subject to the Rules for Deposit Accounts, the corresponding Terms and Charges Disclosure and the EFT Facility Charges Statement given to you in connection with your accounts. If any of the provisions in those brochures are inconsistent with the information in this Agreement, this Agreement will govern.

(Ex. E, p.1; Ex. F, p.1) (emphasis added).

42.     The Debit Card Agreements require that HSBC treat all Point-of-Sale transactions as simultaneous withdrawals.  Therefore, HSBC is prohibited from reordering charges over multiple days and is prohibited from reordering from highest-to-lowest.  By reordering charges from highest-to-lowest and by reordering charges over multiple days, HSBC breaches the terms of its form contracts with its customers, including Plaintiffs and the members of the putative class, it also fraudulently misrepresented its policies to its customers.

43.     The Debit Card Agreements also state that any simultaneous withdrawal using an HSBC debit card results in a hold being placed on the funds.  The funds put on hold are required to be put on hold immediately after the transaction is complete and are used to calculate the available balance on future transactions.  The Debit Card Agreements therefore require charges to be posted chronologically, with the funds for that transaction immediately put on hold.  There is even a specific section entitled "**No Overdraft**" that sets forth explicitly that the Debit

16

MasterCard does not serve as overdraft protection and that an overdraft fee will only be charged when a simultaneous withdrawal exceeds the available balance.  Thus, according to the plain language of the Debit Card Agreements, debit charges are required to be posted immediately and therefore resolved in chronological order before an overdraft fee can be charged.

44.     However, in an effort to maximize overdraft revenue and in contravention of the terms of the Debit Card Agreements, HSBC manipulates and reorders debits from highest to lowest during given periods of time.  HSBC reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge.

**C.      HSBC'S Re-Ordering of Checking Account Transactions Is Illegal and Violates the Provisions of the Form Contracts Entered Into Between HSBC and the Members of the Class**

45.     HSBC misleads its customers regarding its reordering practices.  Instead of unequivocally telling its customers that it always  reorders debits from highest to lowest, HSBC states in its Rules for Deposit Accounts that "[t]he Bank generally pays the largest debit items drawn on a depositor's account first."  This statement creates the false impression that discretion is used in reordering charges, when there is none.  The Charges Disclosure fails to disclose how transactions are reordered from highest to lowest.

46.     In addition, the Debit Card Agreements state that, HSBC "may, but do[es] not have to, *allow* Point-of-Sale transactions which exceed the available balance in your Checking Account." (emphasis added).  The Debit Card Agreements also state, contrary to HSBC's actual high-to-low re-sequencing scheme, that "all Point-of-Sale transactions will constitutes a *simultaneous withdrawal* from your Checking Account."  (emphasis added).  To the extent there are differences between the Debit Card Agreements and the Rules for Deposit Accounts, the terms of the Debit Card Agreements govern.

17

47.     These statements are deceptive, misleading and/or unfair because it is, in fact, HSBC's practice to always reorder debits from highest to lowest, and because HSBC groups together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days, and reorders them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Rules For Deposit Accounts, the Debit Card Agreements and HSBC's customers' reasonable expectations.

48.     Transactions involving debit cards used by HSBC's customers, including the withdrawal of cash from ATM machines and POS transactions with vendors, are processed electronically.  As a result, HSBC is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transactions.

49.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under HSBC's posting system, it fails to post charges in the order in which they are incurred or received.  HSBC developed a policy and employs a practice whereby account charges and debits are posted to its customers' accounts out of chronological order for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

50.     Instead of processing such transactions in chronological order, HSBC processes them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

51.     HSBC refrains from immediately posting charges to a customer's account as it receives them – sometimes for multiple days.  By holding charges rather than posting them immediately, HSBC is able to amass a number of charges on the account.  Subsequently, HSBC

posts all of the amassed charges on a single date. When this group of charges is eventually posted, HSBC posts them in order of largest to smallest – not in the order in which they were received or in the order in which they were charged. This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed. Nothing in any of the disclosures made to its customers does HSBC inform its customers that it would group transactions over multiple days before resequencing them from highest-to-lowest. Furthermore, by delaying the posting of transactions over multiple days as well as resequencing transactions from highest-to-lowest, HSBC creates a scenario in which one large transaction at the end of a cycle can trigger multiple overdraft fees on small transactions made days earlier. The delayed posting also prevents customers from ascertaining the accurate balances in their accounts.

52.     HSBC's policy and practice of posting charges from largest to smallest, rather than chronologically, or from smallest to largest, as well as HSBC's policy and practice of delaying when charges are posted, are designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

53.     HSBC enforces an unconscionable policy whereby charges incurred are posted to customers' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees. HSBC's processing practices substantially increase the likelihood that customers' smaller charges will result in multiple overdraft fees. The practices provide HSBC with substantially higher service fee revenues than it would otherwise achieve absent these practices.

54.     As a result, Plaintiffs and members of the Classes have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

**D.** **HSBC Internal Documents Demonstrate That HSBC Intentionally Implemented This Deceptive, Unlawful and Fraudulent Overdraft Fee Scheme Under The Euphemistically Named "Overdraft Fee Revenue Enhancement" Program**

55.    REDACTED

56.    REDACTED

# REDACTED

57.   REDACTED

58.   REDACTED

59.   REDACTED

60.   REDACTED

61.   REDACTED

# REDACTED

62.     REDACTED

63.     REDACTED

# REDACTED

64.    REDACTED

65.    REDACTED

# REDACTED

66.    REDACTED

REDACTED

REDACTED

67.  REDACTED

REDACTED

# REDACTED

68.  REDACTED

# REDACTED

69.    REDACTED

70.    REDACTED

REDACTED

71.    REDACTED

72.    REDACTED

73.    REDACTED

74.    REDACTED

REDACTED

**E.**   **HSBC Fails to Provide Advance Notice to Customers of Overdrafts or to Advise Customers of Their Right to Opt Out**

75.     At the time that HSBC's check card is used, for example at a POS transaction or at an ATM, HSBC is able to determine virtually instantaneously whether there are sufficient funds in a customer's account to cover that particular transaction.  HSBC has the technological capability to decline transactions or notify customers at that very moment that the particular check card transaction would result in an overdraft.  HSBC could give customers the option to decline the transaction to avoid incurring the overdraft fee, but it does not do this because it seeks to maximize its overdraft fees.

76.     Notwithstanding its technological capabilities and actual knowledge, HSBC fails to provide notice to customers that a particular debit card transaction will result in an overdraft and, hence, an overdraft fee.  Because HSBC's customers are not notified of the potential overdraft, and are not given the option of declining the debit card transaction or providing another form of payment, the customers incur monetary damages in the form of overdraft fees.

77.     Furthermore, the Rules For Deposit Accounts fails to clearly or reasonably disclose to depositors that they have the option to "opt out" of HSBC's overdraft fee scheme. HSBC intentionally conceals this option to ensure that its customers remain subject to the HSBC overdraft fee scheme.

78.     HSBC conducts its overdraft fee scheme without notice to its customers.  They are not informed about the true nature of the scheme and how it operates, and they are given no

29

opportunity to accept or decline.   Customers therefore have no notice of how the scheme is operated, no notice of when or how an overdraft fee will be charged and cannot even determine if their next transaction is an overdraft without knowing exactly when grouping cycles begin and end for resequencing purposes.   Customers therefore are deceived about the nature of the HSBC overdraft fee scheme, when they will be hit with an overdraft fee, and their right to opt-out.   This constitutes false and deceptive conduct on the part of HSBC as to Plaintiffs and the members of the Class.

**F.     HSBC'S Overdraft Policies and Practices are Contrary to Best Practices**

79.     According to rules proposed by the Board of Governors of the Federal Reserve System, the Office of Thrift Supervision, Treasury, and the National Credit Union Administration (the "Agencies"): "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee." 73 F.R. 28904-01, 28929 (May 19, 2008).

80.     HSBC's overdraft policies make it difficult, if not impossible for a customer to avoid injury even if a customer carefully tracks the balance in his or her account.   In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoid[able]" by the consumer. 73 F.R. 28904-01, 28929 ("It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.   Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about

key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available.").

81.     Prior to when the new Federal Reserve System rules went into effect, HSBC did not follow the list of "best practices" with respect to overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" (herein "Joint Guidance") (copy attached as **Exhibit F**), issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation and the National Credit Union Administration. These "best practices" include: "Provide election or opt-out of service. Obtain affirmative consent of consumers to receive overdraft protection. Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt out' of the overdraft program and provide a clear consumer disclosure of this option."  70 F.R. 9127-01, 9132.

82.     Even after those rules went into effect, HSBC still does not follow the Joint Guidance's "best practices."  The "best practices" listed in the Joint Guidance also advise banks to "[a]lert customers before a transaction triggers any fees. When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees." 70 F.R.D. 9127, 9132.   The "best practices" go on to advise that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice."  *Id.*

83.     The list of "best practices" set forth in the "Overdraft Protection: A Guide For Bankers" issued by the American Bankers Association includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that

a particular POS or ATM transaction will cause them to incur overdraft fees. (**Exhibit G**, attached, at pp. 18, 20).

84.    HSBC did not clearly or reasonably disclose to its customers that they have the right to opt out of HSBC's overdraft scheme, nor did they clearly or reasonably disclose such scheme when customers began to opt-in as required by the new Federal Reserve System's new rules. HSBC also fails to notify consumers when use of a check card, such as an ATM or POS transaction, will cause an overdraft fee.

85.    HSBC's lack of reasonable disclosure regarding the ability to opt out of the overdraft scheme and its failure to notify customers when the use of a check card, such as an ATM or POS transaction, will cause an overdraft fee, is a violation of common law and consumer protection laws in the all of the states that HSBC conducts business in, violates HSBC's contractual obligations, as well as violates the implied covenant of good faith and fair dealing contained in its agreements with its customers that governs their checking accounts."

**G.    HSBC's Unconscionable Provisions and Policies**

86.    Under New York General Business Law § 349, California Business and Professions Code §§ 17200 and 17500, and the consumer protection laws of all the other states in which HSBC conducts business, HSBC's overdraft policies and practices are unfair, deceptive, misleading and unconscionable in the following respects, among others:

(a)    HSBC did not clearly or reasonably disclose to customers that they have the option to "opt out" of HSBC's overdraft scheme, nor did they clearly or reasonably disclose such scheme when customers began to opt-in as required by the new Federal Reserve System's new rules;

32

(b)     HSBC does not obtain the affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

(c)     HSBC does not alert its customers that a check card transaction will trigger an overdraft fee and does not provide the customer the opportunity to cancel that transaction;

(d)     The Rules For Deposit Accounts, Terms and Charges Disclosure and Debit Card Agreement, to the extent that they  may be deemed a contract,  are contracts of adhesion in that they are standardized forms, imposed and drafted by HSBC, which is a party of vastly superior bargaining strength, and relegates to the depositor only the opportunity to adhere to it or reject it;

(e)     The Rules For Deposit Accounts, Terms and Charges Disclosure and Debit Card Agreement provided to HSBC's customers are ineffective, contradictory, ambiguous, deceptive and misleading in that they do not unambiguously state that HSBC always reorders debits from high to low (even though HSBC always reorders transactions in this way so as to maximize overdrafts and revenue for HSBC),  that its reordering of debits will necessarily increase the number of overdraft charges, or that it amasses debits over several days in order to maximize the overdraft fees; and

(f)     The amounts of overdraft fees are disclosed in an ineffective, ambiguous, misleading and deceptive manner, since they are not contained in the Rules For Deposit Accounts or the Debit Card Agreement.

87.     The Rules For Deposit Accounts also contains a "Waiver of Trial by Jury" provision, which states "YOU AND THE BANK AGREE TO WAIVE THE RIGHT TO TRIAL

BEFORE A JURY IN ANY ACTION FOR ANY CLAIMS THAT MAY ARISE FROM OR RELATE TO YOUR DEPOSIT ACCOUNT INCLUDING, BUT NOT LIMITED TO, CONTRACT, NEGLIGENCE, USE, ATTORNEYS-IN-FACT, RESTRAINT AND EXECUTION."

88.     Such agreements are procedurally and substantively unconscionable and unenforceable under the laws of the states in which HSBC does business in that, *inter alia*, the Rules For Deposit Accounts, to the extent it may be deemed a contract at all, is a contract of adhesion because, among other reasons, it is a standardized form, imposed and drafted by HSBC, which is a party of vastly superior bargaining strength, and relegates to the depositor only the opportunity to adhere to it or reject it, and because it leads to overly harsh results for consumers and prevents consumers from having a meaningful opportunity to redress their grievances.

## VI.  <u>NATIONAL CLASS AND THE STATE SUBCLASSES</u>

89.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek certification of the following classes:

●     **National Class:**  Plaintiffs seek certification of a nationwide class of all HSBC customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest. Plaintiffs bring claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion and unjust enrichment on behalf of the National Class.

●     **New York Subclass:**  Plaintiffs seek certification of a New York Subclass consisting of all HSBC customers who have accounts at branches in the State of New York who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest.  On behalf of the members of the New York Subclass, in

addition to the claims brought on behalf of the National Class, Plaintiffs also bring claims under New York General Business Law § 349.

●   **California Subclass:**  Plaintiffs seek certification of a California Subclass consisting of all HSBC customers who have accounts at branches in the State of California who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest.  On behalf of the members of the California Subclass, in addition to the claims brought on behalf of the National Class, Plaintiffs also bring claims under the California Consumer Legal Remedies Act (California Civil Code §§ 1750, *et seq.*), the California Unfair Competition Law (California Business and Professions Code §§ 17200, *et seq.*), and the California False Advertising Law (California Business and Professions Code §§ 17500, *et seq.*)

●   **Virginia Subclass:**  Plaintiffs seek certification of a Virginia Subclass consisting of all HSBC customers who have accounts at branches in the State of Virginia who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest.  On behalf of the members of the Virginia Subclass, Plaintiffs bring claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion and unjust enrichment.

●   **Connecticut Subclass:**  Plaintiffs seek certification of a Connecticut Subclass consisting of all HSBC customers who have accounts at branches in the State of Connecticut who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest.  On behalf of the members of the Connecticut Subclass, in addition to the claims brought on behalf of the National Class, Plaintiffs also bring claims under the Connecticut Unfair Trade Practices Act (Connecticut General Statute § 42-110b).

● **Delaware Subclass:** Plaintiffs seek certification of a Delaware Subclass consisting of all HSBC customers who have accounts at branches in the State of Delaware who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest. On behalf of the members of the Delaware Subclass, in addition to the claims brought on behalf of the National Class, Plaintiffs also bring claims under the Delaware Consumer Fraud Act (6 Delaware Code Annotated Title 6, §§ 2511 *et seq.*).

● **Florida Subclass:** Plaintiffs seek certification of a Florida Subclass consisting of all HSBC customers who have accounts at branches in the State of Florida who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest. On behalf of the members of the Florida Subclass, Plaintiffs bring claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion and unjust enrichment.

● **Illinois Subclass:** Plaintiffs seek certification of an Illinois Subclass consisting of all HSBC customers who have accounts at branches in the State of Illinois who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest. On behalf of the members of the Illinois Subclass, in addition to the claims brought on behalf of the National Class, Plaintiffs also bring claims under the Illinois Consumer Fraud Act (815 ILCS 505/1-505/12) and the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1-510/7.)

● **Maryland Subclass:** Plaintiffs seek certification of a Maryland Subclass consisting of all HSBC customers who have accounts at branches in the State of Maryland who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest. On behalf of the members of the Maryland Subclass, in

36

addition to the claims brought on behalf of the National Class, Plaintiffs also bring claims under the Maryland Consumer Protection Act (Maryland Code Annotated, Commercial Law §§ 13-301, *et seq.*)

●　**New Jersey Subclass:**　Plaintiffs seek certification of a New Jersey Subclass consisting of all HSBC customers who have accounts at branches in the State of New Jersey who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest.　On behalf of the members of the New Jersey Subclass, in addition to the claims brought on behalf of the National Class, Plaintiffs also bring claims under the New Jersey Consumer Fraud Act (New Jersey Statute Annotated § 56:8-1, *et seq.*)

●　**New Jersey Subclass:**　Plaintiffs seek certification of an Oregon Subclass consisting of all HSBC customers who have accounts at branches in the State of Oregon who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest.　On behalf of the members of the Oregon Subclass, in addition to the claims brought on behalf of the National Class, Plaintiffs also bring claims under the Oregon Unlawful Trade Practices Act (ORS 646.05, *et seq.*)

●　**Pennsylvania Subclass:**　Plaintiffs seek certification of a Pennsylvania Subclass consisting of all HSBC customers who have accounts at branches in the State of Pennsylvania who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest.　On behalf of the members of the Pennsylvania Subclass, in addition to the claims brought on behalf of the National Class, Plaintiffs also bring claims under the Pennsylvania Unfair Trade Practices and Consumer Fraud Law (73 Pennsylvania Statute Annotated §§ 201-1, *et seq.*)

● **Washington Subclass:**  Plaintiffs seek certification of a Washington Subclass consisting of all HSBC customers who have accounts at branches in the State of Washington who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest.  On behalf of the members of the Washington Subclass, in addition to the claims brought on behalf of the National Class, Plaintiffs also bring claims under the Washington Consumer Protection Act (RCW 19.86.010, *et seq.*)

● **District of Columbia Subclass:**  Plaintiffs seek certification of a District of Columbia Subclass consisting of all HSBC customers who have accounts at branches in the District of Columbia who incurred an overdraft fee as a result of HSBC's practice of re-sequencing debit card and/or POS transactions from highest to lowest.  On behalf of the members of the District of Columbia Subclass, in addition to the claims brought on behalf of the National Class, Plaintiffs also bring claims under the District of Columbia Consumer Protection Procedure Act (D.C. Code §§ 28-3901, *et seq.*)

## VII.  ALLEGATIONS SPECIFIC TO PLAINTIFF JURA

90.    Plaintiff Darek Jura was, at all relevant times, a checking account customer of HSBC.  He opened his checking account with HSBC in the late 1990s.  During the relevant time period, Mr. Jura was issued a check card by HSBC.

91.    During his time as a checking account customer of HSBC, Plaintiff Jura was charged with overdraft fees when there were sufficient funds in his account to cover the transaction at issue.

92.    For example, on August 7, 2008, Mr. Jura was charged with five (5) overdraft charges for a total of $140.  The overdraft fees were based on the following ordering of transactions:

**Balance Sheet per HSBC Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

|  |  | Debits | Deposits | Fees | Balance |
|---|---|---|---|---|---|
|  | Beginning Balance on 8/6/08: |  |  |  | $151.34 |
| **Date Posted** | **Description** |  |  |  |  |
| 8/6/08 | Purchase (on 8/5/08) at PayPal | 60.13 |  |  | 91.21 |
| 8/6/08 | Purchase (on 8/2/08) at Tilt | 43.50 |  |  | 47.71 |
| 8/6/08 | Purchase (on 8/2/08) at Tilt | 29.00 |  |  | 18.71 |
| 8/6/08 | Purchase (on 8/2/08) at Tilt | 26.00 |  |  | -7.29 |
| 8/6/08 | Purchase (on 8/2/08) at Tilt | 20.00 |  |  | -27.29 |
| 8/6/08 | Purchase (on 8/2/08) at Tilt | 12.50 |  |  | -39.79 |
| 8/6/08 | Purchase (on 8/4/08) at J&P Pappas Restaurant | 11.00 |  |  | -50.79 |
| 8/6/08 | Purchase (on 8/4/08) at J&P Pappas Restaurant | 10.50 |  |  | -61.29 |
| 8/7/08 |  |  |  | 140.00 |  |

93.　　　Although Mr. Jura's account statement notes that Mr. Jura incurred overdraft fees based on "5 ITEM(S)," he was only charged for four (4) overdrafts for a total of $140.00.  In any

39

event, if HSBC had not manipulated and reordered Mr. Jura's transactions from highest to lowest, Mr. Jura would have only incurred two overdraft fees:

### Balance Sheet per HSBC Reordering Scheme
### (Debits Processed in Chronological Order)

|  |  | Debits | Deposits | Fees | Balance |
|---|---|---|---|---|---|
|  | Beginning Balance on 8/6/08: |  |  |  | $151.34 |
| **Date Posted** | **Description** |  |  |  |  |
| 8/2/08 | Purchase (on 8/2/08) at Tilt | 43.50 |  |  | 107.84 |
| 8/2/08 | Purchase (on 8/2/08) at Tilt | 29.00 |  |  | 78.84 |
| 8/2/08 | Purchase (on 8/2/08) at Tilt | 26.00 |  |  | 52.84 |
| 8/2/08 | Purchase (on 8/2/08) at Tilt | 20.00 |  |  | 32.84 |
| 8/2/08 | Purchase (on 8/2/08) at Tilt | 12.50 |  |  | 20.34 |
| 8/4/08 | Purchase (on 8/4/08) at J&P Pappas Restaurant | 11.00 |  |  | 9.34 |
| 8/4/08 | Purchase (on 8/4/08) at J&P Pappas Restaurant | 10.50 |  |  | -1.16 |
| 8/5/08 | Purchase (on 8/5/08) at PayPal | 60.13 |  |  | -61.21 |
| 8/7/08 |  |  |  | 70.00 |  |

40

94.     At all relevant times, HSBC did not reasonably provide Mr. Jura with notice that he could opt out of HSBC's overdraft program.

95.     HSBC has never notified Mr. Jura at the time he made check card transactions, including POS transactions, that his checking account was overdrawn or that it would charge him an overdraft fee as a result of the transaction.

96.     HSBC never declined to pay any of Plaintiff Jura's check card charges, even when his account was overdrawn. Rather, HSBC has always paid such charges and charged Mr. Jura with overdraft fees.

## VIII.  ALLEGATIONS SPECIFIC TO PLAINTIFF HANES

97.     During the Class Period, Plaintiff Hanes was charged overdraft fees on transactions even when she had adequate funds to cover the transactions. The following is an example from May 2010, in which Plaintiff Hanes was hit with additional overdraft fees even though she had funds available at the time to cover those transactions -- fees that Plaintiff Hanes should not have paid.

**Balance Sheet per HSBC Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| Date Posted | Transaction Description | Debit | Debit/Purchase Date | Credit/Deposit | Overdraft Charge | Balance |
|---|---|---|---|---|---|---|
| 5/21/2010 | Payment | $15.00 | | | | $444.90 |
| 5/24/2010 | ATM withdrawal (5/23) | $300.00 | 5/23/2010 (Sunday) | | | |
| 5/24/2010 | Recurring Payment | $159.11 | 5/24/2010 (Monday) | | | |
| 5/24/2010 | Purchase | $98.22 | 5/23/2010 (Sunday) | | | |
| 5/24/2010 | Purchase | $24.10 | 5/20/2010 (Thursday) | | | |
| 5/24/2010 | Purchase | $20.09 | 5/21/2010 (Friday) | | | $(156.30) |

41

| | | | | | | |
|---|---|---|---|---|---|---|
| 5/25/2010 | Service Charge; 4 items posted on 5/24 | | (Tuesday) | | $140.00 | |

98.     If HSBC had not held some of the transactions listed above and reordered them over several days, Plaintiff Hanes would have had only one overdraft –   the recurring payment of $159.11 – and would have had none had HSBC notified her of the impending overdraft and given her the opportunity either to refuse payment or cover the amount.

**Balance Sheet per HSBC Reordering Scheme**
**(Debits Processed in Chronological Order)**

| Date Posted | Transaction Description | Debit | Debit/Purchase Date | Credit/Deposit | Overdraft Charge | Balance |
|---|---|---|---|---|---|---|
| 5/21/2010 | Payment | $15.00 | | | | $444.90 |
| 5/24/2010 | Purchase | $24.10 | 5/20/2010 (Thursday) | | | 420.80 |
| 5/24/2010 | Purchase | $20.09 | 5/21/2010 (Friday) | | | 400.71 |
| 5/24/2010 | ATM withdrawal (5/23) | $300.00 | 5/23/2010 (Sunday) | | | 100.71 |
| 5/24/2010 | Purchase | $98.22 | 5/23/2010 (Sunday) | | | 2.59 |
| 5/24/2010 | Recurring Payment | $159.11 | 5/24/2010 (Monday) | | | $(156.30) |
| 5/25/2010 | Service Charge | | 5/25/2010 (Tuesday) | | $35.00 | |

99.     During the Class Period, HSBC misled Plaintiff Hanes regarding its overdraft practices and failed to provide her with notice that she could opt in or opt out of HSBC's overdraft policies.  HSBC misled Plaintiff Hanes and failed to provide her with sufficient disclosure of the nature and scope of HSBC's overdraft policies and sometimes multi-day resequencing scheme and the impact such a scheme would have on her. During the Class Period, HSBC misled Plaintiff Hanes and failed to warn her or inform her, at any time, that her checking

account was overdrawn and that if she completed a certain transaction, she would be charged an overdraft fee.  As such, HSBC did not give Plaintiff Hanes an opportunity to either accept or reject the transaction.

100.    Plaintiff Hanes was deceived by HSBC since she relied on HSBC's representations to her.  Furthermore, the terms of her agreement with HSBC were breached. Finally, Plaintiff Hanes suffered an actual economic harm because she was forced to pay additional overdraft charges as a result of HSBC's overdraft policies and resequencing scheme, charges that she should not have been required to pay.

## FIRST CAUSE OF ACTION

**(On Behalf of Plaintiffs, the National Class and the State Subclasses)**

**(Breach of Contract)**

101.    Plaintiffs repeat and reallege all of the foregoing paragraphs as though fully set forth herein.

102.    As described above, Plaintiffs and all other members of the National Class entered into  contracts with HSBC.

103.    Plaintiffs and all other members of the National Class performed all, or substantially all, of their responsibilities under the contracts.

104.    HSBC materially breached its contracts with Plaintiffs and all other members of the National Class by engaging in the misleading and deceptive acts and practices described above, and thus, deprived Plaintiffs and all other members of the National Class of the benefit of their bargain.

105.    As a consequence of the foregoing, HSBC is liable to Plaintiffs and all other members of the National Class, the amount of such damages to be determined at trial.

106.    HSBC destroyed or injured the rights of Plaintiffs and all other members of the National Class to receive the fruits of the contract.

107.    As a consequence of the foregoing, HSBC is liable to Plaintiffs and all other members of the National Class, the amount of such damages to be determined at trial.

## SECOND CAUSE OF ACTION

**(On Behalf of Plaintiffs, the National Class and the State Subclasses)**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

108.    Plaintiffs repeat and reallege all of the foregoing paragraphs as though fully set forth herein.

109.    As described above, Plaintiffs and all other members of the National Class entered into  contracts with HSBC.

110.    Plaintiffs and all other members of the National Class performed all, or substantially all, of their responsibilities under the contracts.

111.    Implied into every contract is a covenant of good faith and fair dealing that requires the parties to act in good faith in their dealings with each other.  This is especially true of the party that is a stronger position and has the ability to exercise discretion.  That discretion is required to be exercised in good faith.

112.    HSBC violated the implied covenant of good faith and fair dealing towards Plaintiffs and all other members of the National Class by engaging in the misleading and deceptive acts and practices described above, and thus, deprived Plaintiffs and all other members of the National Class of the benefit of their bargain.

113.    As a consequence of the foregoing, HSBC is liable to Plaintiffs and all other members of the National Class, the amount of such damages to be determined at trial.

114.    HSBC destroyed or injured the rights of Plaintiffs and all other members of the National Class to receive the fruits of the contract.

115.    As a consequence of the foregoing, HSBC is liable to Plaintiffs and all other members of the National Class, the amount of such damages to be determined at trial.

## THIRD CAUSE OF ACTION

**(On Behalf of Plaintiffs, the National Class and the State Subclasses)**

**(Conversion)**

116.    Plaintiffs repeat and reallege all of the foregoing paragraphs as though fully set forth herein.

117.    Plaintiffs and the other members of the National Class own and have the right to possess the money in their checking accounts.

118.    Through its actions, HSBC has wrongfully collected overdraft fees from Plaintiffs and the other members of the National Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees.

119.    Through its actions, HSBC has, without authority and/or legal justification, assumed and exercised a right of ownership over such funds belonging to Plaintiffs and the other members of the National Class to the exclusion of Plaintiffs and the other members of the National Class.

120.    Plaintiffs and the other members of the National Class have been, and will continue to be, damaged by HSBC's wrongful assessment of overdraft fees in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### (On Behalf of Plaintiffs, the National Class and the State Subclasses)

### (Unjust Enrichment)

121.    Plaintiffs repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

122.    By engaging in the conduct described above, HSBC has unjustly enriched itself at the expense of Plaintiffs and the other members of the National Class and is required, in equity and good conscience, to compensate them fully for the damages that they have suffered as a result of HSBC's actions.

123.    By reason of the foregoing, HSBC is liable to Plaintiffs and the other members of the National Class for the damages they have suffered as a result of HSBC's actions, the amount of such damages to be determined at trial.

## FIFTH CAUSE OF ACTION

### (On Behalf of Plaintiff Jura and the New York Subclass)

### (Violation of New York General Business Law § 349)

124.    Plaintiff Jura repeats and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

125.    Through its misconduct described above, HSBC has engaged in acts and/or practices that are deceptive or misleading in a material way and that resulted in injury to Plaintiff Jura  and the other members of the New York Subclass.

126.    By reason of the foregoing, HSBC has violated New York General Business Law § 349 and decisional law prohibiting deceptive trade practices and consumer fraud, is liable to Plaintiff Jura and the other members of the New York Subclass for the damages that they have

suffered as a result of HSBC's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## SIXTH CAUSE OF ACTION

### (On behalf Plaintiff Hanes and the California Subclass)

### (Violation of the California Consumer Legal Remedies Act, Civil Code §§ 1750, *et seq.*)

127.    Plaintiff Hanes repeats and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

128.    HSBC provides "services" within the meaning of Civil Code §§ 1761(a), 1761(b), and 1770.

129.    HSBC is a "person" within the meaning of Civil Code §§ 1761(c) and 1770.

130.    Purchasers of HSBC's services, including Plaintiff Hanes and California Subclass members, are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770.

131.    Plaintiff Hanes' and each and every California Subclass members' purchase of the services sold by HSBC constitutes a "transaction" within the meaning of Civil Code §§ 1761(d) and 1770.

132.    The policies, acts and practices of HSBC as described in this Complaint were intended to result in the sale of services to Plaintiff Hanes and California Subclass members.

133.    HSBC has engaged in deceptive practices, unlawful methods of competition, and/or unfair acts as defined in the CLRA, to the detriment of Plaintiff Hanes and California Subclass members.  HSBC's deceptive practices were intentionally, knowingly, and unlawfully perpetrated upon Plaintiff Hanes and California Subclass members and have violated and continue to violate the Consumer Legal Remedies Act in at least the following aspects:

A.    In violation of Civil Code § 1770(a)(5) and (14), HSBC makes deceptive representations in connection with the services in question;

47

B.     In violation of Civil Code § 1770(a)(5), HSBC represents that its services have characteristics, uses or benefits that they do not have;

C.     In violation of Civil Code § 1770(a)(14), HSBC represents that its services confer or involve rights, remedies or obligations that they do not have or which are prohibited by law;

D.     In violation of Civil Code § 1770(a)(19), HSBC inserts an unconscionable provision in a contract.

134.   As a result of HSBC's actions, Plaintiff Hanes and California Subclass members have incurred damages in the form of insufficient funds and overdraft fees being assessed and automatically withdrawn from their checking accounts.

135.   In accordance with Civil Code § 1782, Plaintiff Hanes sent notice to HSBC and gave HSBC thirty days to respond.  Accordingly, Plaintiff Hanes on behalf of herself and the California Class requests injunctive and monetary relief pursuant to the CLRA.

136.   Plaintiff Hanes and the California Subclass further seek recovery of attorneys' fees and costs of litigation pursuant to Civil Code § 1780(d).

## SEVENTH CAUSE OF ACTION

### (On Behalf Plaintiff Hanes and the California Subclass)

### (Violation of Business and Professions Code §§ 17200 *et seq.*)

137.   Plaintiff Hanes repeats and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

138.   HSBC's acts and practices as described herein constitute fraudulent business practices, in that the uniform conduct of HSBC has a tendency to deceive Plaintiff Hanes and California Subclass members.  HSBC's practices were also unfair in adopting an appropriate mechanism for opting in or opting out of HSBC's overdraft policies and procedures.

139.   HSBC's unfair and fraudulent business acts and practices include, but are not limited to, imposing overdraft fees for transactions made when there were sufficient funds in

their respective accounts; concealing the nature and scope of the overdraft fee scheme, including how HSBC batches together transactions on multiple days before using its highest to lowest resequencing scheme to manipulate overdraft charges, providing inaccurate balance information and failing to provide reasonable notice to enable customers to avoid incurring unnecessary fees; and misrepresenting or failing to provide accurate information regarding the status of customers' accounts.

140.    In addition to the above, the conduct as alleged throughout the Complaint constitutes breach of contract, unjust enrichment, and conversion that not only result in liability as individual causes of action, but provide the basis for a finding of liability under Business and Professions Code §§ 17200 *et seq.*

141.    Plaintiff Hanes and California Subclass members have been injured in fact and lost money or property as a result of incurring overdraft fees that otherwise would not have been incurred.

142.    HSBC's conduct violates Business and Professions Code §§ 17200 *et seq.*, and other similar state unfair competition and unlawful practices statutes.

143.    Pursuant to Business and Professions Code §§ 17200 and 17203, Plaintiff Hanes, on behalf of herself and all other similarly situated, seek relief as prayed for below.

## EIGHTH CAUSE OF ACTION

### (On Behalf of Plaintiff Hanes and the California Subclass)

### (Violation of Business and Professions Code §§ 17500 et seq. - False Advertising)

144.    Plaintiff Hanes repeats and realleges each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

145.    HSBC engaged in false advertising in violation of Business and Professions Code §§ 17500, *et seq.* The standardized practices and advertisements regarding HSBC's overdraft

49

charge scheme were uniformly applied to Plaintiff Hanes and California Subclass members. Examples of the false and misrepresentative advertisements implemented and adopted by Defendant are set forth in the above "Factual Allegations," and include the Rules of Deposit Accounts.  Plaintiff Hanes and the California Subclass members relied on the advertisements and suffered injury in fact and lost money or property as a result of incurring overdraft fees that otherwise would not have been incurred

146.    Pursuant to Business and Professions Code § 17500, Plaintiff Hanes, on behalf of herself and all others similarly situated, seek relief as prayed for below.

### NINTH CAUSE OF ACTION

**(On Behalf of Plaintiffs and the Connecticut Subclass)**

**(Violation of Connecticut General Statute § 42-110b, *et seq.*)**

147.    Plaintiffs repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

148.    HSBC's conduct as set forth in this complaint is in violation of the Connecticut Unfair Trade Practiuces Act in that such conduct constitutes an unfair method of competition and constitutes unfair or deceptive acts or practices.

149.    HSBC's unfair and fraudulent business acts and practices include, but are not limited to, imposing overdraft fees for transactions made when there were sufficient funds in their respective accounts; concealing the nature and scope of the overdraft fee scheme, including how HSBC batches together transactions on multiple days before using its highest to lowest resequencing scheme to manipulate overdraft charges, providing inaccurate balance information and failing to provide reasonable notice to enable customers to avoid incurring unnecessary fees; and misrepresenting or failing to provide accurate information regarding the status of customers' accounts.

50

150.    Plaintiffs and the members of the Connecticut Subclass have suffered an ascertainable loss in that they have been forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

151.    HSBC's misconduct is a proximate cause of the harm to Plaintiffs and the members of the Connecticut Subclass.  But for HSBC's fraudulent and deceptive conduct in concealing the true nature of its overdraft fee scheme, and its misconduct in regards to resequencing transactions and batching transactions over multiple days, is a direct cause of the Plaintiffs and members of the Connecticut Subclass being forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

## TENTH CAUSE OF ACTION

### (On Behalf of Plaintiffs and the Delaware Subclass)

### (Violation of 6 Delaware Code Annotated Title 6, §§ 2511 *et seq.*)

152.    Plaintiffs repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

153.    HSBC's conduct as set forth in this complaint is in violation of the Delaware Consumer Fraud Act in that HSBC has acted, used and employed deception, fraud, false pretense, false promise, misrepresentations, concealment, suppression and/or omissions of material facts in connection with the issuance of their debit cards and their overdraft fee scheme.

154.    HSBC's conduct was intentional and it intended through its misconduct that Plaintiffs and the members of the Class rely on its unfair acts and practices, deceptions, misrepresentations and omissions.

155.    HSBC's deceptive and fraudulent conduct include, but are not limited to, imposing overdraft fees for transactions made when there were sufficient funds in their respective accounts; concealing the nature and scope of the overdraft fee scheme, including how

HSBC batches together transactions on multiple days before using its highest to lowest resequencing scheme to manipulate overdraft charges, providing inaccurate balance information and failing to provide reasonable notice to enable customers to avoid incurring unnecessary fees; and misrepresenting or failing to provide accurate information regarding the status of customers' accounts.

156.    Plaintiffs and the members of the Delaware Subclass have suffered an ascertainable loss in that they have been forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.  Plaintiffs seek  both compensatory and punitive damages pursuant to the Delaware Consumer Fraud Act.

157.    HSBC's misconduct is a proximate cause of the harm to Plaintiffs and the members of the Delaware Subclass.  But for HSBC's fraudulent and deceptive conduct in concealing the true nature of its overdraft fee scheme, and its misconduct in regards to resequencing transactions and batching transactions over multiple days, is a direct cause of the Plaintiffs and members of the Delaware Subclass being forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

## ELEVENTH CAUSE OF ACTION

### (On Behalf of Plaintiffs and the Illinois Subclass)

### (Violation of 815 ILCS 505/1, *et seq.*)

158.    Plaintiffs repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

159.    HSBC's conduct as set forth in this complaint is in violation of the Illinois Consumer Fraud Act.  HSBC is liable under the Illinois Consumer Fraud Act under both the unfair and deceptive prongs in that HSBC's conduct constitutes both unfair acts or practices, as well as deceptive acts and practices.  HSBC used and employed deception and the suppression,

concealment and/or omission of materials facts in regards to its debit cards and its overdraft fee scheme.

160.    HSBC's conduct was intentional and it intended through its misconduct that Plaintiffs and the members of the Class rely on its unfair acts and practices, deceptions, misrepresentations and omissions.

161.    HSBC's deceptive and fraudulent conduct includes, but are not limited to, imposing overdraft fees for transactions made when there were sufficient funds in their respective accounts; concealing the nature and scope of the overdraft fee scheme, including how HSBC batches together transactions on multiple days before using its highest to lowest resequencing scheme to manipulate overdraft charges, providing inaccurate balance information and failing to provide reasonable notice to enable customers to avoid incurring unnecessary fees; and misrepresenting or failing to provide accurate information regarding the status of customers' accounts.

162.    HSBC's conduct constitutes a *per se* violation of the Illinois Consumer Fraud Act as HSBC's conduct violates the Illinois Uniform Deceptive Practices Act (815 ILCS 510/1, *et seq.*) in that HSBC misrepresented the quality and nature of its debit card, checking account and "overdraft protection" services.  HSBC concealed the fact that, built into these services, was a overdraft fee scheme which was designed to fraudulently and unlawfully maximize overdraft fees through practices and policies that were not disclosed to its customers.

163.    Plaintiffs and the members of the Illinois Subclass have suffered actual damages in that they have been forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.  Plaintiffs seek  both compensatory and punitive damages pursuant to the Illinois Consumer Fraud Act.

164.   HSBC's misconduct is a proximate cause of the harm to Plaintiffs and the members of the Illinois Subclass.   But for HSBC's fraudulent and deceptive conduct in concealing the true nature of its overdraft fee scheme, and its misconduct in regards to resequencing transactions and batching transactions over multiple days, is a direct cause of the Plaintiffs and members of the Illinois Subclass being forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

## TWELFTH CAUSE OF ACTION

### (On Behalf of Plaintiffs and the Illinois Subclass)

### (Violation of 815 ILCS 510/1, *et seq.*)

165.   Plaintiffs repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

166.   HSBC's conduct as set forth in this complaint is in violation of the Illinois Uniform Deceptive Trade Practices Act.

167.   HSBC is liable under the Illinois Uniform Deceptive Trade Practices Act because it unlawfully represented that its debit card, checking account and "overdraft protection" services were of a particular standard, quality, or grade when they are of another.

168.   HSBC is liable under the Illinois Uniform Deceptive Trade Practices Act because it unlawfully advertised its debit card, checking account and "overdraft protection" services with the intent not to sell them as advertised;

169.   HSBC is liable under the Illinois Uniform Deceptive Trade Practices Act because it unlawfully engaged in conduct which creates a likelihood of confusion or misunderstanding.

170.   HSBC's deceptive and unfair business practices and acts include, but are not limited to, imposing overdraft fees for transactions made when there were sufficient funds in their respective accounts; concealing the nature and scope of the overdraft fee scheme, including

how HSBC batches together transactions on multiple days before using its highest to lowest resequencing scheme to manipulate overdraft charges, providing inaccurate balance information and failing to provide reasonable notice to enable customers to avoid incurring unnecessary fees; and misrepresenting or failing to provide accurate information regarding the status of customers' accounts.

171.     Plaintiffs and the members of the Illinois Subclass seek injunctive relief pursuant to the Illinois Uniform Deceptive Trade Practices Act.  HSBC's violation of the Illinois Uniform Deceptive Trade Practices Act also constitutes a *per se* violation of the Illinois Consumer Fraud Act, by which Plaintiffs and the members of the Illinois Subclass seek compensatory and punitive damages.

### THIRTEENTH CAUSE OF ACTION

**(On Behalf of Plaintiffs and the Maryland Subclass)**

**(Violation of Maryland Code Annotated, Commercial Law §§ 13-301, *et seq.*)**

172.     Plaintiffs repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

173.     HSBC's conduct as set forth in this complaint is in violation of the Maryland Consumer Protection Act.  HSBC engaged in practices that are both unfair and deceptive in regards to the sale of its debit card, checking account and "overdraft protection" services.

174.     HSBC is liable under the Maryland Consumer Protection Act for false or misleading statements that have the capacity, tendency, or effect of deceiving or misleading consumers.

175.     HSBC is liable under the Maryland Consumer Protection Act for misrepresenting that its debit card, checking account and "overdraft protection" services would be of a particular standard, quality, grade, style or model when it is not.

176.    HSBC is liable under the Maryland Consumer Protection Act for failing to state a material fact regarding its debit card, checking account and "overdraft protection" services which deceives or tends to deceive consumers.

177.    HSBC is liable under the Maryland Consumer Protection Act for advertising and/or offering its debit card, checking account and "overdraft protection" services without intent to provide these services as advertised or offered.

178.    HSBC is liable under the Maryland Consumer Protection for engaging in deception, fraud, false pretense, false premise, misrepresentation and/or knowing concealment, suppression and/or omission of material facts with the intent that consumers rely on such misconduct in connection with the promotion of its debit card, checking account and "overdraft protection" services.

179.    HSBC's misconduct includes, but are not limited to, imposing overdraft fees for transactions made when there were sufficient funds in their respective accounts; concealing the nature and scope of the overdraft fee scheme, including how HSBC batches together transactions on multiple days before using its highest to lowest resequencing scheme to manipulate overdraft charges, providing inaccurate balance information and failing to provide reasonable notice to enable customers to avoid incurring unnecessary fees; and misrepresenting or failing to provide accurate information regarding the status of customers' accounts.

180.    HSBC's conduct was intentional in that HSBC knew that its' unlawful overdraft fee scheme was unlawful but would allow HSBC to maximize the overdraft fees it could collect. HSBC thus intentionally violated its legal obligations and intentionally deceived its customers about its services and the manner in which it operated its overdraft fee scheme.

181.    Plaintiffs and the members of the Maryland Subclass relied on the uniform misrepresentations and misconduct of HSBC and such reliance was justifiable.  HSBC's conduct had a tendency and a likelihood to deceive reasonable consumers.

182.    Plaintiffs and the members of the Maryland Subclass have suffered actual damages in that they have been forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

183.    HSBC's misconduct is a proximate cause of the harm to Plaintiffs and the members of the Maryland Subclass.  But for HSBC's fraudulent and deceptive conduct in concealing the true nature of its overdraft fee scheme, and its misconduct in regards to resequencing transactions and batching transactions over multiple days, is a direct cause of the Plaintiffs and members of the Maryland Subclass being forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

## FOURTEENTH CAUSE OF ACTION

### (On Behalf of Plaintiffs and the New Jersey Subclass)

### (Violation of New Jersey Statute Annotated § 56:8-1, *et seq.*)

184.    Plaintiffs repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

185.    HSBC's conduct as set forth in this complaint is in violation of the New Jersey Consumer Fraud Act in that HSBC has acted, used and employed unconscionable business practices, deception, fraud, false pretense, false promise, misrepresentations, and/or the knowing concealment, suppression and/or omissions of material facts in connection with the issuance of their debit cards and their overdraft fee scheme.

186.    HSBC intended through its misconduct that Plaintiffs and the members of the Class rely on its unfair acts and practices, deceptions, misrepresentations and omissions.

187.     HSBC's deceptive and fraudulent conduct include, but are not limited to, imposing overdraft fees for transactions made when there were sufficient funds in their respective accounts; concealing the nature and scope of the overdraft fee scheme, including how HSBC batches together transactions on multiple days before using its highest to lowest resequencing scheme to manipulate overdraft charges, providing inaccurate balance information and failing to provide reasonable notice to enable customers to avoid incurring unnecessary fees; and misrepresenting or failing to provide accurate information regarding the status of customers' accounts.

188.     Plaintiffs and the members of the New Jersey Subclass have suffered an ascertainable loss in that they have been forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.  Plaintiffs seek  both compensatory and punitive damages pursuant to the New Jersey Consumer Fraud Act.

189.     HSBC's misconduct is a proximate cause of the harm to Plaintiffs and the members of the New Jersey Subclass.  But for HSBC's fraudulent and deceptive conduct in concealing the true nature of its overdraft fee scheme, and its misconduct in regards to resequencing transactions and batching transactions over multiple days, is a direct cause of the Plaintiffs and members of the New Jersey Subclass being forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

## **FIFTEENTH CAUSE OF ACTION**

### **(On Behalf of Plaintiffs and the Oregon Subclass)**

### **(Violation of ORS 646.605, *et seq.*)**

190.     Plaintiffs repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

191.   HSBC's conduct as set forth in this complaint is in violation of the Oregon Unlawful Trade Practices Act.

192.   HSBC is liable under the Oregon Unlawful Trade Practices Act by representing that its debit card, checking account and "overdraft protection" services had sponsorship, approval, characteristics, ingredients, uses, benefits, quantitites or qualities that those services did not and do not have.

193.   HSBC is liable under the Oregon Unlawful Trade Practices Act for misrepresenting that its debit card, checking account and "overdraft protection" services would be of a particular standard, quality or grade when they are not.

194.   HSBC is liable under the Oregon Unlawful Trade Practices for advertising and/or offering its debit card, checking account and "overdraft protection" services with intent not to provide these services as advertised or offered.

195.   HSBC's unlawful and fraudulent trade and business practices include, but are not limited to, imposing overdraft fees for transactions made when there were sufficient funds in their respective accounts; concealing the nature and scope of the overdraft fee scheme, including how HSBC batches together transactions on multiple days before using its highest to lowest resequencing scheme to manipulate overdraft charges, providing inaccurate balance information and failing to provide reasonable notice to enable customers to avoid incurring unnecessary fees; and misrepresenting or failing to provide accurate information regarding the status of customers' accounts.

196.   Plaintiffs and the members of the Oregon Subclass have suffered actual damages in that they have been forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

197. HSBC's misconduct is a proximate cause of the harm to Plaintiffs and the members of the Oregon Subclass. But for HSBC's fraudulent and deceptive conduct in concealing the true nature of its overdraft fee scheme, and its misconduct in regards to resequencing transactions and batching transactions over multiple days, is a direct cause of the Plaintiffs and members of the Oregon Subclass being forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

## SIXTEENTH CAUSE OF ACTION

### (On Behalf of Plaintiffs and the Washington Subclass)

### (Violation of RCW 19.86.010, *et seq.*)

198. Plaintiffs repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

199. HSBC's conduct as set forth in this complaint is in violation of the Washington Consumer Protection Act.

200. HSBC engaged in business practices and acts that were both unfair and deceptive. HSBC's conduct that is the subject of this lawsuit are part of the conduct of its trade or commmerce.

201. HSBC's unfair and deceptive trade and business practices include, but are not limited to, imposing overdraft fees for transactions made when there were sufficient funds in their respective accounts; concealing the nature and scope of the overdraft fee scheme, including how HSBC batches together transactions on multiple days before using its highest to lowest resequencing scheme to manipulate overdraft charges, providing inaccurate balance information and failing to provide reasonable notice to enable customers to avoid incurring unnecessary fees; and misrepresenting or failing to provide accurate information regarding the status of customers' accounts.

60

202. HSBC's conduct has a significant impact on the public interest because its pervasive deceptive and unlawful conduct affects Washington's public interest in preserving a business environment devoid of fraud, deception and unlawful business practices. Washington state has a significant public interest in ensuring that all businesses within the state act in an honest and truthful manner.

203. HSBC's conduct was intentional in that HSBC knew that its' unlawful overdraft fee scheme was unlawful but would allow HSBC to maximize the overdraft fees it could collect. HSBC thus intentionally violated its legal obligations and intentionally deceived its customers about its services and the manner in which it operated its overdraft fee scheme.

204. Plaintiffs and the members of the Washington Subclass have suffered actual damages in that they have been forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

205. HSBC's misconduct is a proximate cause of the harm to Plaintiffs and the members of the Washington Subclass. But for HSBC's fraudulent and deceptive conduct in concealing the true nature of its overdraft fee scheme, and its misconduct in regards to resequencing transactions and batching transactions over multiple days, is a direct cause of the Plaintiffs and members of the Washington Subclass being forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

## SEVENTEENTH CAUSE OF ACTION

**(On Behalf of Plaintiffs and the Washington D.C. Subclass)**

**(Violation of D.C. Code § 28-3901, *et seq.*)**

206. Plaintiffs repeat and reallege each and every allegation contained in all of the foregoing paragraphs as if fully set forth herein.

207.    HSBC's conduct as set forth in this complaint is in violation of the District of Columbia's Consumer Protection Procedure Act.

208.    HSBC is liable under the District of Columbia's Consumer Protection Procedure Act for misrepresenting that its debit card, checking account and "overdraft protection" services would be of a particular standard, quality, grade, style or model when it is not

209.    HSBC is liable under the District of Columbia's Consumer Protection Procedure Act for misrepresenting material facts regarding its debit card and checking account services and its overdraft fee scheme which has a tendency to mislead.

210.    HSBC is liable under the District of Columbia's Consumer Protection Procedure Act for failing to state material facts regarding its debit card and checking account services and its overdraft fee scheme, and such failure tends to misleads.

211.    HSBC is liable under the District of Columbia's Consumer Protection Procedure Act for advertising and/or offering its debit card, checking account and "overdraft protection" services without intent to provide these services as advertised or offered.

212.    HSBC's misconduct includes, but are not limited to, imposing overdraft fees for transactions made when there were sufficient funds in their respective accounts; concealing the nature and scope of the overdraft fee scheme, including how HSBC batches together transactions on multiple days before using its highest to lowest resequencing scheme to manipulate overdraft charges, providing inaccurate balance information and failing to provide reasonable notice to enable customers to avoid incurring unnecessary fees; and misrepresenting or failing to provide accurate information regarding the status of customers' accounts.

213.    HSBC's conduct was intentional in that HSBC knew that its' unlawful overdraft fee scheme was unlawful but would allow HSBC to maximize the overdraft fees it could collect.

HSBC thus intentionally violated its legal obligations and intentionally deceived its customers about its services and the manner in which it operated its overdraft fee scheme.

214. Plaintiffs and the members of the Washington D.C. Subclass have suffered actual damages in that they have been forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

215. HSBC's misconduct is a proximate cause of the harm to Plaintiffs and the members of the Washington D.C. Subclass. But for HSBC's fraudulent and deceptive conduct in concealing the true nature of its overdraft fee scheme, and its misconduct in regards to resequencing transactions and batching transactions over multiple days, is a direct cause of the Plaintiffs and members of the Washington D.C. Subclass being forced to pay more overcharge fees than they should have been charged if HSBC had complied with its legal obligations.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the Classes, demand a jury trial and judgment as follows:

1. For an order certifying this case as a class action under Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) and appointing Plaintiffs Jura and Hanes and their counsel to represent the Class;

2. Preliminary and permanent injunctive relief enjoining HSBC from charging overdraft fees under its current policies and from engaging in the unfair and deceptive business practices alleged herein;

3. Restitution of all overdraft fees paid to HSBC by Plaintiffs and the members of the Classes, as a result of the wrongs alleged herein, within the applicable statutes of limitations, in an amount to be determined at trial;

4. Disgorgement of the ill-gotten gains derived by HSBC from its misconduct;

5.      Actual damages in an amount according to proof;

6.      Punitive and exemplary extent to the maximum extent allowed by law;

7.      Treble and/or multiple damages to the extent allowed by law;

8.      Statutory penalties for violation of state consumer protection laws;

9.      Reasonable attorneys' fees to the extent allowed by law;

10.     Pre-judgment interest at the highest rate permitted by law;

11.     The costs and disbursements incurred by Plaintiffs and the members of the Classes in connection with this action; and

12.     Such other and further relief as the Court deems just and proper.

September 30, 2013

**CUNEO GILBERT & LADUCA, LLP**

By: /s/ Jonathan W. Cuneo
Jonathan W. Cuneo (Bar No. JC1112)
jonc@cuneolaw.com
Sandra W. Cuneo (admitted *pro hac vice*)
scuneo@cuneolaw.com
507 C Street, N.E.
Washington, DC 20002
Telephone: (202) 789-3960

**COTCHETT, PITRE & MCCARTHY, LLP**

By: /s/ Joseph W. Cotchett
Joseph W. Cotchett (Bar No. JC7420)
jcotchett@cpmlegal.com
Nancy L. Fineman (admitted *pro hac vice*)
nfineman@cpmlaw.com
Aron K. Liang (admitted *pro hac vice*)
aliang@cpmlaw.com
840 Malcolm Road
Burlingame, California 94010
Telephone:  (650) 697-6000

*Counsel for Plaintiff Leah Hanes*

**RIGRODSKY & LONG, P.A.**

By: /s/ Seth D. Ridrodsky
Seth D. Rigrodsky (Bar No. SR9430)
sdr@rigrodskylong.com
Timothy J. MacFall (Bar No. TM8639)
tjm@rigrodskylong.com
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Facsimile: (302) 654-7530

**COHEN LAW GROUP, P.C.**

By: /s/ Brian S. Cohen
Brian S. Cohen (Bar No. BC2091)
brian@cohenlg.com
Clifford J. Bond (Bar No. CB4679)
cliff@cohenlg.com
10 East 40th Street, 46th Fl.
New York, NY 10016
Telephone: (212) 967-2879
Facsimile: (646) 349-2567

*Counsel for Plaintiff Darek Jura*

*Co-Interim Class Counsel for Plaintiffs and the Putative Classes*